12 CIV 4440

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Tesonn Hendrix

                      Plaintiff,

        -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY DEPARTMENT OF
CORRECTIONS, KINGS COUNTY DISTRICT ATTORNEY
CHARLES J. HYNES, in his individual and official capacity
as an employee of the Kings County District Attorney's Office,
POLICE OFFICER Detective Michael Donovan Shield 4917,
POLICE OFFICERS JOHN DOE # 1 through approximately
# 5, the names being fictitious and presently unknown, in their
individual and official capacities as employees of the City of
New York Police Department

                      Defendants.
------------------------------------------------------------X

**COMPLAINT AND JURY DEMAND**

    The Plaintiff, Tesonn Hendrix, by his attorney, Gregory Zenon, Esq., of The Law Office of Gregory Zenon, alleges the following, upon information and belief for this Complaint:

### NATURE OF THE ACTION / PRELIMINARY STATEMENT

    1.    This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988, the Fourth, Fifth, Fourteenth Amendments of the United States Constitution, Article I, Sections 6, 11, 12 of the Constitution of the State of New York, and the common law of the State of New York, against the City of New York, the New York City Police Department, the New York City Corrections Department, Kings County District Attorney Charles J. Hynes in his individual and official capacity, and against Police Officer Donovan and Police Officers John Doe # 1-5, police officers of the City of New York, in their individual and official capacities. Plaintiff seeks compensatory and punitive damages, affirmative and equitable relief, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

### JURISDICTION

    2.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4). Plaintiff also asserts jurisdiction over the City of New York under 28 U.S.C. §1331 and §1367. Plaintiff requests this Court exercise pendent jurisdiction over those state law claims arising out of the same common nucleus of operative facts as plaintiff's federal claims.

### VENUE

    3.    Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York because the defendants CITY OF NEW YORK, and NEW YORK CITY POLICE DEPARTMENT, have their headquarters located within the boundaries of the Southern District of New York, particularly New York County.

### PARTIES

    4.    Plaintiff at all times relevant hereto resided in the City and State of New York.

    5.    That at all times hereinafter mentioned, and upon information and belief, the defendant, THE CITY OF NEW YORK, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

6. THE NEW YORK CITY POLICE DEPARTMENT was at all times relevant hereto, an agency of the defendant THE CITY OF NEW YORK.

7. THE NEW YORK CITY CORRECTIONS DEPARTMENT was at all times relevant hereto, an agency of the defendant THE CITY OF NEW YORK.

8. KINGS COUNTY DISTRICT ATTORNEY CHARLES J. HYNES was at all times relevant hereto, an employee of the defendant THE CITY OF NEW YORK. The OFFICE OF THE KINGS COUNTY DISTRICT ATTORNEY is an agency of the CITY OF NEW YORK. Therefore, DEFENDANT DISTRICT ATTORNEY, and the CITY OF NEW YORK, are responsible for the actions of the employees of the KINGS COUNTY DISTRICT ATTORNEY, including torts, that are committed within the scope of said employment and/or under color of law.

9. That at all times hereinafter mentioned, and on information and belief, the defendant Police Officer Donovan and/or additional defendant Police Officers, were at all times relevant hereto, employees of the defendant CITY OF NEW YORK, as police officers employed by the defendant, THE NEW YORK CITY POLICE DEPARTMENT.

10. At all times mentioned herein, defendants were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

11. That at all times hereinafter mentioned, and upon information and belief, the individual defendants are named herein both personally and in their official representative capacities as employees of the defendant THE CITY OF NEW YORK and/or police officers employed by THE NEW YORK CITY POLICE DEPARTMENT. And that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes and laws of the State of New York, and under and by virtue of their authority as police officers and/or employees of defendant, THE CITY OF NEW YORK.

12. That as a result of the foregoing, the defendant, THE CITY OF NEW YORK, is liable for the individual defendant's acts pursuant to the doctrine of "respondeat superior."

**FACTUAL ALLEGATIONS**

13. At the time of the incident Plaintiff was a 29 year old American citizen and father.

14. On June 6, 2009, Mr. Hendrix was arrested and charged with Murder in the 2nd Degree and related charges relating to the death of Kendal Isler who was shot and killed on October 1, 2007 inside of 869 Flushing Avenue, Brooklyn, NY. From that day forward Mr. Hendrix informed the police that he was innocent.

15. Plaintiff was an acquaintance of Isler. Prior to his death, Isler contacted plaintiff about purchasing narcotics. Plaintiff eventually arranged a meeting between Isler and a purveyor of narcotics named Damon Toler. The understanding was that Isler would purchase narcotics from Toler on October 1, 2007 inside of 869 Flushing Avenue.

16. Plaintiff did not attend the meeting, but waited nearby for Isler.

17. At the meeting, Toler and an associate of Toler named Clifford Thompson robbed and killed Isler.

2

18. When Isler did not return, plaintiff walked to the location and saw numerous police vehicle around the building. Plaintiff called Toler to find out what happened. Toler told him in effect that Toler and Thompson robbed Isler, but that during the robbery Thomspon screwed up.

19. No arrests were initially made.

20. Almost a year later, on September 22, 2008, Toler was arrested for an unrelated gunpoint robbery,

21. On September 22, 2008, during his booking procedure, Toler offered the police and the Kings County District Attorney ("DA") information pertaining to Isler in exchange for a deal. Toler went on video that day and stated that he was involved in the robbery but that Thompson killed Isler.

22. That week, Toler testified in the Grand Jury that plaintiff had set up the meeting and that it was plaintiff's plan for Toler and Thompson to rob Isler.

23. By September 30, 2008, the NYPD and DA had plaintiff's information and knew plaintiff's whereabouts.

24. Over the next nine months, from October 2008 until June 2009, the NYPD and DA performed or could have performed an investigation into the allegations that plaintiff was involved in the murder. There was never any corroborative evidence recovered linking plaintiff to the murder.

25. In addition, multiple still surveillance photographs depicting Isler, Thompson and Toler entering the building were recovered and moved into evidence as the case proceeded through the courts. No video, photographic, or forensic evidence was ever discovered linking plaintiff to the murder.

26. In that time period, the NYPD and the DA also performed or could have performed an investigation into the credibility of Toler, including his extensive criminal record, including at least 20 arrests and at least 40 separate charges over an approximate 10 year period.

27. Nonethless, on June 6, 2009, members of the NYPD went to plaintiff's home and arrested him and charged him with the murder.

28. From that moment forward, plaintiff maintained his innocence.

29. That same day, June 6, 2009, plaintiff made a video-taped statement explaining the events leading up to the murder, including that he was not present.

30. At the Criminal Court arraignment, the DA requested that plaintiff be remanded, and their request was granted. The DA did not inform the Court of the lack of evidence or Toler's cooperation agreement which led to the arrest.

31. Plaintiff remained in custody and maintained his innocence until he went to trial and was acquitted of all charges, on December 17, 2010,

32. The Jury took less than 30 minutes to reach their verdict.

33. While at the precinct, Mr. Hendrix was denied a phone call and food.

34. While being arrested, plaintiff suffered an anxiety attack and developed chest pains, due to the arrest, and had to be taken to Woodhull hospital.

35. Plaintiff remained falsely incarcerated for approximately a total of 559 days

36. While falsely incarcerated plaintiff suffered an infection in his left foot and required medical treatment.

37. While falsely incarcerated plaintiff was assaulted on three separate occasions and suffered a lacerated lip, a swollen eye, and additional injuries.

38. Plaintiff requested that bail be set on numerous court appearances, and on each one the DA opposed the request and based on that the Court denied

39. A simple and proper investigation would have revealed that my client was innocent.

40. This arrest, prosecution and incarceration were committed without legal process or probable cause.

41. As a direct and proximate result of the malicious and outrageous conduct of defendants as set forth above, Mr. Hendrix suffered injuries including but not limited to assault and battery, emotional trauma, harm and distress, mental anguish, fear, embarrassment, humiliation, loss of liberty, loss of property, psychological injury and suffering.

**FIRST CAUSE OF ACTION**
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

42. Paragraphs 1 through 42 are herein incorporated by reference.

43. Defendants subjected plaintiff to false arrest, imprisonment, and deprivation of liberty without probable cause.

44. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution.

45. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged in the sum of One Million ($1,000,000.00) Dollars.

**SECOND CAUSE OF ACTION**
(MUNICIPAL LIABILTY and NEGLIGENT HIRING, TRAINING and SUPERVISION)

46. Paragraphs 1 through 45 are incorporated herein by reference.

47. Defendant CITY OF NEW YORK is liable for the damages suffered by the plaintiff as a result of the conduct of its employees, agents, and servants.

48. Defendant CITY OF NEW YORK knew or should have known of their employees', agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

49. Upon information and belief, defendants and their supervisors have in the past falsely arrested individuals without probable cause, and made, and allowed other fellow police officers to make false entries in official police department records to cover up and hide their wrongful conduct.

50. Defendant CITY OF NEW YORK has failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct. Defendant CITY OF NEW YORK committed intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and disciple its agents, servants, and/or employees of the KINGS COUNTY DISTRICT ATTORNEY and NEW YORK CITY POLICE and CORRECTIONS DEPARTMENTS with regard to their aforementioned duties.

51. Defendant CITY OF NEW YORK has damaged the plaintiff by its failure to properly supervise, train, discipline, review, remove, or correct the illegal and improper acts of its employees, agents or servants in this and in similar cases involving police misconduct.

52. Defendants subjected plaintiff to false arrest and false imprisonment.

53. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the defendant CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

### THIRD CAUSE OF ACTION
(FOURTH AMENDMENT)

54. Paragraphs 1 through 53 are incorporated herein by reference.

55. Defendant Officer Donovan illegally arrested plaintiff subjecting him to false arrest, imprisonment and deprivation of liberty with probable cause.

56. That as a result of the foregoing, the plaintiff has been deprived of his following rights, privileges and immunities secured him by the constitution and the laws of the United States: the right to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments; the rights of the plaintiff not to be deprived of life, liberty or property without due process of law under the Fourth and Fourteenth Amendments; and the right to be free from a deprivation of his civil rights in violation of the statutes made and provided.

57. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the defendant CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

### FOURTH CAUSE OF ACTION
(FOURTEENTH AMENDMENT)

58. Paragraphs 1 through 57 are incorporated herein by reference.

59. Defendant Officer Donovan illegally arrested plaintiff subjecting him to false arrest, imprisonment and deprivation of liberty with probable cause.

60. That as a result of the foregoing, the plaintiff has been deprived of his following rights, privileges and immunities secured him by the constitution and the laws of the United States: the right to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments; the rights of the plaintiff not to be deprived of life, liberty or property without due process of law under the Fourth and Fourteenth Amendments; and the right to be free from a deprivation of his civil rights in violation of the statutes made and provided.

61. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the defendant CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

### FIFTH CAUSE OF ACTION
(ASSAULT)

62. Paragraphs 1 through 61 are incorporated herein by reference.

63. That the Court has pendant jurisdiction of this claim.

64. That as a result of the foregoing, the defendant Officer Donovan intentionally put the plaintiff in fear and fright of imminent physical harm.

65. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of defendants Donovan, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY CORRECTIONS DEPARTMENT, KINGS COUNTY DISTRICT ATTORNEY CHARLES J. HYNES, and CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

### SIX CAUSE OF ACTION
(BATTERY)

66. Paragraphs 1 through 65 are incorporated herein by reference.

67. Defendant Donovan battered the plaintiff.

68. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of defendants Donovan, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY CORRECTIONS DEPARTMENT, KINGS COUNTY DISTRICT ATTORNEY CHARLES J. HYNES, and CITY OF NEW YORK in the amount of One Million ($1,000,000.00) Dollars.

## SEVENTH CAUSE OF ACTION
(MALICIOUS PROSECUTION)

69. Paragraphs 1 through 68 are incorporated herein by reference.
70. Defendants caused a false accusatory instrument to be filed against plaintiff.
71. The criminal instrument was dismissed and the criminal proceedings favorably terminated.
72. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §§ 1983 and 1985 and the New York State Constitution.
73. Plaintiff was damaged in the sum of One Million ($1,000,000.00) Dollars as a result of the malicious prosecution implemented by the defendants.

## REQUEST FOR RELIEF

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally as follows:

A. Awarding plaintiff One Million ($1,000,000.00) Dollars on each of Cause of Action;

B. Awarding plaintiff punitive damages of One Million ($1,000,000.00) Dollars on each of Cause of Action;

C. Awarding plaintiff reasonable attorney's fees, costs and disbursements of this action;

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: 6 JUNE 2012
New York, New York

Gregory Zenon, The Law Office of Gregory Zenon
110 Wall Street, 11th Floor
New York, New York 10005
212.380.8582
zenonlaw@yahoo.com
Attorney for Plaintiff