UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
TESSON HENDRIX,

             Plaintiff,                    MEMORANDUM AND ORDER

     - against -                    12 CV 5011 (ILG) (CLP)

CITY OF NEW YORK, et al.,

             Defendant.
---------------------------------------------------x
GLASSER, United States District Judge:

        Plaintiff Tesson Hendrix brings this action against the City of New York ("City"),

New York City Police Department ("NYPD"), New York City Department of Corrections

("DOC"), Kings County District Attorney Charles J. Hynes ("Hynes"), Kings County

Assistant District Attorney Howard Jackson ("Jackson"), and NYPD officers Michael

Donovan ("Donovan"), Christopher Scandole ("Scandole"), and John Does #1–5

(together with Donovan and Scandole, the "officers", and together with Hynes and

Jackson, the "individual defendants"), alleging false arrest, false imprisonment,

malicious prosecution, unconstitutional conditions of confinement, deliberate

indifference to medical needs, failure to protect, assault, battery, and negligence  in

violation of 42 U.S.C. § 1983, Article I, § 12 of the New York State Constitution

("NYSC"), and New York common law.  Currently before the Court is defendants'[1]

motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure for failure to state a claim.  For the reasons that follow, the defendants'

motion is GRANTED.

## BACKGROUND

---

[1] The motion is made on behalf of the City, Hynes, Jackson, Donovan, and Scandole, but not on behalf of
the John Doe defendants, NYPD, or DOC.  Defs.' Mem. at 1 n.1.  As discussed infra, the NYPD and DOC
are non-suable entities and counsel has therefore not appeared on their behalf.

I.    Facts & Procedural History

The following facts are taken from plaintiff's first amended complaint, Dkt. No. 12 ("FAC"), and are accepted as true for purposes of this motion. Plaintiff was contacted by an acquaintance, Kendal Isler ("Isler"), about purchasing narcotics. FAC ¶ 15. Plaintiff arranged a meeting between Isler and Damon Toler ("Toler"), a drug dealer, which took place on October 1, 2007. Id. Plaintiff did not attend this meeting, but waited nearby. Id. ¶ 16. During the meeting, Toler and his associate, Clifford Thompson ("Thompson"), robbed and killed Isler. Id. ¶ 17. When plaintiff called Toler afterward, Toler explained that Toler and Thompson robbed Isler, but that "during the robbery Thompson screwed up" and Isler was killed. Id. ¶ 18.

Toler was arrested for an unrelated crime on September 22, 2008. Id. ¶ 20. After his arrest, Toler offered the police information in exchange for a deal, stating that he was involved in robbing Isler but that Thompson had killed Isler. Id. ¶ 21. Toler later testified to a grand jury that plaintiff had set up the meeting with Isler and that it was plaintiff's plan for Toler and Thompson to rob Isler. Id. ¶ 22. On June 6, 2009, plaintiff was arrested and charged with Isler's murder. Id. ¶ 27. In the course of his arrest, plaintiff suffered an anxiety attack and developed chest pains and was taken to the hospital. Id. ¶ 34.

Plaintiff stated at the time of his arrest, and maintained afterward, that he was innocent and provided a video-taped statement explaining his account of the events that led up to Isler's meeting with Toler. Id. ¶¶ 28–29. Plaintiff was imprisoned pending trial and his requests for bail were denied. Id. ¶¶ 30, 38. During his imprisonment, he suffered an infection in his left foot that required medical treatment and was assaulted

on three occasions, suffering a lacerated lip and swollen eye.  Id. ¶¶ 36–37.  After a criminal trial, plaintiff was acquitted of all charges on December 17, 2010.

Plaintiff initiated this action by filing his initial complaint in this Court on June 6, 2012.  Dkt. No. 1 ("Initial Compl.").  The defendants answered the Initial Complaint on January 2, 2013.  Dkt. No. 8.  Plaintiff filed the FAC on March 12, 2013.  Dkt. No. 12.  On July 2, 2013, defendants moved to dismiss the FAC for failure to state a claim.  Dkt. No. 20 ("Defs.' Mem.").  Plaintiff filed his opposition on September 16, 2013.  Dkt. No. 29 ("Pl.'s Opp'n").  Defendants filed their reply on October 7, 2013.  Dkt. No. 32 ("Defs.' Reply").

## II.  Legal Standard

### A.  Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" by the plaintiff will not suffice.  Id. (internal quotations and citations omitted).  This plausibility standard "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quoting Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)). Defendants attach a number of exhibits to their motion to dismiss. Declaration of Max McCann in Support of Defendants' Motion to Dismiss dated July 2, 2013 [Dkt. No. 19] ("McCann Decl."), Exs. A–F. The Court may take judicial notice of these exhibits, which include New York Supreme Court Indictment No. 5228/2009 dated June 12, 2009, McCann Decl., Ex. B, the Criminal Court Complaint dated June 7, 2009, id., Ex. F, and Decision and Order dated November 19, 2010, id., Ex. C, in the matter of People v. Hendrix, and plaintiff's arrest and arraignment report, id., Ex. D, as they are matters of public record. See, e.g., Harris v. City of New York, No. 09-CV-3474

4

(KAM), 2013 WL 4858333, at *2 (E.D.N.Y. Sept. 10, 2013) ("It is well established that this court can take judicial notice of arrest reports and certificates of disposition, arraignments, and criminal complaints and indictments.") (citations omitted); Johnson v. Pugh, No. 11-CV-385 (RRM) (MDG), 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial notice of matters of public record, including . . . decisions in prior state court adjudications"); Parker v. City of New York, No. 09 Civ. 910 (JG), 2010 WL 1693007, at *3 n. 2 (E.D.N.Y. Apr. 28, 2010) (taking judicial notice of date of arraignment from state court record in determining whether statute of limitations had run on false arrest claim); Vasquez v. City of New York, No. 00 Civ. 4606, 2000 WWL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000) (taking judicial notice of criminal complaint and indictment).

### B. Section 1983

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir.1999). The statute itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Id. (citations omitted). Thus, the "first step" in analyzing such a claim "is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 270 (1994) (citations omitted). A plaintiff also must plead the personal involvement of defendants in the alleged constitutional violation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir.2010). Personal involvement for purposes of a § 1983 action means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing

subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). A complaint is fatally defective on its face if it fails to allege that the defendants were directly and personally responsible for the purported unlawful conduct. See, e.g., Costello v. City of Burlington, 632 F.3d 41, 48–49 (2d Cir. 2011); Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987).

Here, plaintiff claims violations of his Fourth and Fourteenth Amendment rights.[2] New York law provides the elements of plaintiff's false arrest and malicious prosecution causes of action. See, e.g., Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (false arrest); Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (malicious prosecution).

## DISCUSSION

I.  Plaintiff's Claims Against Certain Defendants

Before addressing whether plaintiff has stated any plausible claims in the FAC, the Court may first dispose of claims against certain of the defendants.

### A.  The NYPD and DOC

It is well-settled that neither the NYPD nor the DOC is a suable entity. Maier v. N. Y. City Police Dep't, No. 08 Civ. 5104 (ILG), 2009 WL 2915211, at *2 (E.D.N.Y. Sept. 1, 2009) ("The New York City Police Department is an organizational subdivision of the City of New York, lacking independent legal existence and as such is not a suable entity.") (quotation omitted); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency of the City."); Adams v. Galletta, 966 F.Supp. 210, 212 (S.D.N.Y. 1997) ("where a plaintiff has

---

[2] Although plaintiff also alleges violations of his Fifth and Eighth Amendment rights. FAC ¶ 1. But because plaintiff was imprisoned as a pretrial detainee by state officials, his claims related to his detention sound as violations of his Fourteenth Amendment rights. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).

named the Department of Corrections as a defendant he has sued a non-suable entity"). All of the claims in the FAC against the NYPD and DOC are therefore dismissed.

### B. Scandole

Scandole was not named as a defendant in the Initial Complaint.  Compare Initial Complaint at 1, with FAC at 1.  Although plaintiff lists Scandole as a defendant in the caption of the FAC, the FAC is devoid of any further mention of Scandole, including in the introductory paragraphs describing the defendants and the nature of the action.  See FAC at 1–2.[3]  It is well established that "[t]he substance of the pleadings, not the caption, determines the identity of the parties."  Mateo v. JetBlue Airways Corp., 847 F. Supp. 2d 383, 384 n.1 (E.D.N.Y. 2012).  Because the FAC does not contain any allegations regarding Scandole, let alone allegations of his personal involvement in any constitutional deprivations or torts, the FAC is fatally defective with respect to Scandole. Costello, 632 F.3d at 48–49.  All of the claims against Scandole are therefore dismissed.

### C. The Individual Defendants Sued in their Official Capacities

Plaintiff asserts claims against defendants Hynes, Jackson, and the officers in both their official and individual capacities.  Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)).  Accordingly, such claims are routinely dismissed as duplicative when the municipality is also a defendant.  See, e.g., Thomas v. Venditto, 925 F. Supp. 2d 352, 364 (E.D.N.Y. 2013); Volpe v. Nassau Cnty., 915 F. Supp.

---

[3] The FAC similarly lists Jackson in the caption but is devoid of any mention of him in the body, unless the references throughout the FAC to the "DAs" are read to refer to both Hynes and Jackson.

2d 284, 298 (E.D.N.Y. 2013). Because plaintiff has also sued the City, his claims against the individual defendants in their official capacities are dismissed.

### D. Hynes and Jackson

It is well established that prosecutors are entitled to immunity when discharging their official duties. See, e.g., Hill v. City of New York, 45 F.3d 653, 660 (2d Cir. 1995). They are entitled to absolute immunity "for that conduct intimately associated with the judicial phase of the criminal process," as well as "conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." Id. at 661 (internal citations and quotations omitted). Only qualified immunity is available where prosecutors perform "investigative functions normally performed by a detective or police officer." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Either form "is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S 511, 526 (1985) (emphasis in original).

Applying this functional test, Hynes and Jackson are plainly entitled to absolute immunity against plaintiff's claim of malicious prosecution, which arises out of their decision to initiate plaintiff's prosecution. See, e.g., Hill, 45 F.3d at 661 ("it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution"). With respect to plaintiff's false arrest claim, which arises out of the decision to arrest plaintiff and the determination that there was probable cause to do so, Hynes and Jackson are entitled only to qualified immunity. See, e.g., id., (holding that district attorney was entitled to qualified immunity for "advising the police during the investigative stage of a case that they have probable cause to arrest") (citing Burns v. Reed, 500 U.S. 478, 493 (1991)). Plaintiff argues that Hynes and Jackson are not

entitled to immunity in any form because they conspired with the officers and Toler to falsely implicate plaintiff. Opp'n at 13. This allegation has no bearing on Hynes' and Jackson's absolute immunity against plaintiff's malicious prosecution claim. See Giraldo v. Kessler, 694 F.3d 161, 167 (2d Cir. 2012) (finding that, because prosecutors were entitled to absolute immunity, it was "irrelevant" that plaintiff alleged that prosecutors' interview of her "was in furtherance of a conspiracy" to falsely implicate her boyfriend). And with respect to plaintiff's false arrest claim, Hynes' and Jackson's qualified immunity is ultimately irrelevant, as there was probable cause to arrest plaintiff.[4] See infra.

II.  False Arrest Claims

New York law provides the elements of plaintiff's claim of false arrest. Singer, 63 F.3d at 118. Under New York law, the elements of such a claim are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Id. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins, 478 F.3d at 84 (internal quotation omitted). Here, plaintiff claims he was arrested and imprisoned without probable cause, in violation of his Fourth Amendment rights. FAC ¶ 17.

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

---

[4] In any event, plaintiff's allegation does not necessarily deprive Hynes and Jackson of qualified immunity. See Hill, 45 F.3d at 662 (finding that qualified, but not absolute, immunity could be available for "efforts to manufacture evidence that occur during the investigatory phase of a criminal case").

committed or is committing a crime." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and knowledge of the officers." <u>Id.</u> Plaintiff appears to assert two reasons why there was no probable cause for his arrest: First, the NYPD failed to investigate Toler's credibility, FAC ¶ 24, and failed generally to properly investigate Isler's murder, <u>id.</u> ¶ 39. Second, plaintiff suggests (but does not specifically allege) that the information provided by Toler was not "reasonably trustworthy." <u>Id.</u> ¶ 46. Neither of plaintiff's arguments is compelling.

With respect to plaintiff's first argument, plaintiff is simply incorrect that defendants' failure to properly investigate Toler's claims would negate probable cause. It is "of no consequence" to a probable cause determination "that a more thorough or more probing investigation might have cast doubt upon the situation." <u>Fabrikant v. French</u>, 691 F.3d 193, 214–15 (2d Cir. 2012) (quoting <u>Krause v. Bennett</u>, 887 F.2d 362, 371 (2d Cir. 1989)). It is well-established that "[t]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." <u>Panetta v. Crowley</u>, 460 U.S. 388, 395–96 (2d Cir. 2006) (internal citation and quotation omitted). In addition, "once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." <u>Id.</u> at 396. If Toler's statements were sufficient to provide defendants with probable cause, plaintiff's subsequent arrest was privileged.

With respect to plaintiff's second argument, the FAC contains only conclusory allegations regarding the absence of probable cause.  <u>See</u> FAC ¶ 40.  Nevertheless, the Court will interpret plaintiff's mention of Toler's "extensive criminal history," <u>id.</u> ¶ 26, as suggesting that Toler lacked credibility and therefore that his testimony was not "reasonably trustworthy," rendering it insufficient to establish probable cause.[5]  But even on this generous reading, plaintiff fails to plausibly allege that defendants lacked probable cause to arrest him.

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." <u>Panetta v. Crowley</u>, 460 U.S. 388, 395 (2d Cir. 2006) (internal citation and quotation omitted).  Furthermore, "uncorroborated testimony from an accomplice is sufficient to support the standard of proof needed for probable cause," <u>United States v. Douglas</u>, No. 04 CR. 293(JSR), 2006 WL 3155065, at *2 (S.D.N.Y. Oct. 30, 2006), in part because of "the reliability accorded admissions against penal interest," <u>Roundtree v. City of New York</u>, 208 A.D.2d 407, 407, 617 N.Y.S.2d 170 (N.Y. App. Div. 1994).  While "such admissions are not guarantees of truthfulness and they should be accepted only after careful consideration of all the relevant circumstances of the case indicates that there exists a

---

[5] In Plaintiff's Opposition, he alleges for the first time that Toler was a "violent convicted felon" with "motive to lie" and claims that the officers, Hynes, and Jackson conspired to fabricate probable cause based on Toler's testimony.  Pl.'s Opp'n at 16.  In addition, plaintiff alleges in his Opposition that defendants "investigated Toler's claims and were not able to find any evidence linking Plaintiff to the crimes for which he was eventually charged." <u>Id.</u> at 17.  This second allegation is puzzling, since the allegations in the FAC are premised on defendants' <u>failure</u> to properly investigate Isler's murder and Toler's credibility.  FAC ¶¶ 26, 39.  But in any event, the Court need not consider these allegations in ruling on the present motion.  <u>See, e.g.</u>, <u>Galiano v. Fidelity Nat'l Title Ins. Co.</u>, No. 08-CV-4711 (TCP) (WDW), 2010 WL 9447505, at *3 (E.D.N.Y. Nov. 8, 2010) (stating that "[n]ew facts and allegations, first raised in a plaintiff's opposition papers, may not be considered" on a motion to dismiss); <u>Scholastic, Inc. v. Stouffer</u>, 124 F. Supp. 2d 836, 851 (S.D.N.Y. 2000) ("parties are not entitled to assert new facts in submissions on a motion to dismiss").

basis for finding reliability," id., plaintiff has not plausibly alleged any facts sufficient to undercut the presumptive reliability of Toler's statements.

In Roundtree, the "indicia of unreliability" that rendered the accomplice's statement incredible included "discrepancies in the witness' statements," independent evidence that the accomplice had sole access to the crime scene, and statements by other witnesses suggesting that the accomplice had motive to falsely inculpate the defendant. Id. Plaintiff makes no such allegations in the FAC. Specifically, he does not suggest that, at the time of plaintiff's arrest, defendants were aware of other evidence that cast doubt on the substance of Toler's statements. He merely states that Toler had an extensive criminal record. Standing alone, this is insufficient grounds to infer that Toler's testimony was so unreliable as to negate probable cause for plaintiff's arrest.

For the foregoing reasons, the plaintiff's false arrest claim is dismissed.

III.    Municipal Liability Claims

Plaintiff also asserts a Monell claim against the City, alleging that his unlawful arrest was the result of the City "fail[ing] to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct." FAC ¶ 50. "A Monell claim—arising from the Supreme Court case of Monell v. Department of Social Services, 436 U.S. 658 (1978)—is a way to hold a municipality liable under Section 1983 for the conduct of its employees." Pugh v. City of New York, 2002 WL 398804 (ILG), at *2 (E.D.N.Y. Jan. 15, 2002). A municipality may be liable under § 1983 when, by implementation of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers" or through practices that are so "permanent and well settled" as to constitute governmental "custom," it deprives the plaintiff of a constitutional right.

Monell, 436 U.S. at 690.  A municipality may also be liable "under the so-called 'failure to train' theory . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Jenkins, 478 F.3d at 94 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).  Because plaintiff has failed to demonstrate that his arrest was unlawful and in violation of his constitutional rights, his Monell claim must also fail.

Moreover, plaintiff has failed to satisfy any of the requirements for pleading municipal liability based on either the existence of an official policy or custom or failure to train.  In the first place, plaintiff makes no allegation of the existence of any official policy, and makes only conclusory allegations of past occurrences of misconduct. "[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."  Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).  And with respect to his claim that the City failed to train, supervise, and discipline its police officers, the plaintiff offers only an unsupported conclusory allegation that the City "failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct."  FAC ¶ 50.  This "naked assertion[] devoid of further factual enhancement" is insufficient to state a plausible claim.   Iqbal, 556 U.S. at 678.  A Monell claim based on failure to train "cannot be grounded solely on the conclusory allegations of the plaintiff."  Santos v. New York City, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012); see also Triano, 895 F. Supp. 2d at 539 (granting motion to dismiss where plaintiff "merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training

program, or regarding other instances of police misconduct which could be attributed to a failure to train").

The plaintiff's <u>Monell</u> claims against the City are therefore dismissed.

IV. Malicious Prosecution Claims

Plaintiff next asserts a claim for malicious prosecution. As with plaintiff's false arrest claim, New York law provides the elements of the cause of action. <u>Cook</u>, 41 F.3d at 80. Under New York law, the plaintiff must prove four elements to succeed on a claim of malicious prosecution: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated favorably to the plaintiff; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. <u>Rothstein v. Carriere</u>, 373 F.3d 275, 282 (2d Cir. 2004); <u>Savino v. City of New York</u>, 331 F.3d 63, 72 (2d Cir. 2003). Because he fails to show that there was no probable cause for the criminal charge, plaintiff fails to state a plausible claim for malicious prosecution.

The existence of probable cause is a complete defense to a claim of malicious prosecution. <u>Savino</u>, 331 F.3d at 72. New York law provides for a "presumption of probable cause for the purposes of defending against a malicious prosecution claim" where the plaintiff was indicted by a grand jury. <u>Green v. Montgomery</u>, 219 F.3d 52, 60 (2d Cir. 2000). This presumption of probable cause "may <u>only</u> be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" <u>Id.</u> (emphasis in original) (quoting <u>Colon v. City of New York</u>, 60 N.Y.2d 78, 83, 468 N.Y.S.2d 453, 456, 455 N.E.2d 1248 (1994). Plaintiff was indicted by a grand jury on June 30, 2009. <u>See</u> McCann Decl., Ex B at 3–4.

Plaintiff does not allege that his indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith," but asserts only that the defendants "conspired to deprive him of [his] rights." FAC ¶ 72. Such an allegation is merely a legal conclusion and is not entitled to the presumption of truth for purposes of deciding this motion.[6] Iqbal, 556 U.S. at 680; Twombly, 550 U.S. at 555. The only other allegations in the FAC that bear on probable cause are that the NYPD failed to investigate Toler's credibility, FAC ¶ 24, and that it failed generally to properly investigate Isler's murder, FAC ¶ 39. These allegations are insufficient to show misconduct and overcome the presumption of probable cause. Police officers are not obligated to pursue every possible avenue that may exonerate the defendant, Gisondi v. Harrison, 523 N.Y.S.2d 235 (1988), and the failure to conduct an exhaustive investigation is not misconduct, see, e.g., Gil v. Cnty. of Suffolk, 590 F. Supp. 2d 360, 370 (E.D.N.Y. 2008) ("[F]ailure to conduct further investigation . . . does not amount to fraud, bad faith or the suppression of evidence and is insufficient to overcome the presumption."). Having failed to rebut the presumption of probable cause created by the plaintiff's grand jury indictment, plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 547, and defendants' motion is granted as to plaintiff's malicious prosecution claim.

V.    Plaintiff's Remaining Constitutional Claims

Plaintiff asserts a number of additional constitutional claims, styled as unconstitutional conditions of confinement, FAC ¶¶ 75–81, deliberate indifference to

---

[6] This is also true of the allegation—which does not appear in the FAC but only in the plaintiff's Opposition—that Donovan, Scandole, Hynes, and Jackson "conspired with a known felon who had a motive to lie to fabricate an incredible tale that resulted in" plaintiff's indictment and prosecution. Pl.'s Opp'n at 7. As discussed supra, the Court need not consider such allegations in ruling on the present motion. Galiano, 2010 WL 9447505, at *3; Stouffer, 124 F. Supp. 2d at 851.

medical needs, id., failure to protect, id. ¶¶ 82–85, and cruel and unusual punishment, id. ¶¶ 86–90.  These claims are based on the following allegations: that plaintiff was denied a phone call and food and water at the police station, id. ¶¶ 33, 76; that he suffered an anxiety attack at the police station that required hospitalization, id. ¶¶ 34, 79; that he suffered an infection in his foot due to the conditions of his confinement at Rikers Island, id. ¶¶ 36, 87; and that he was assaulted on three occasions by other inmates at Rikers Island, id. ¶¶ 37, 83.

### A.  Unconstitutional Conditions of Confinement

Claims regarding inadequate conditions of confinement for pre-trial detainees are measured by "whether the conditions amount to 'punishment' without due process in violation of the Fourteenth Amendment."  Lareau v. Manson, 651 F.2d 96, 102 (2d Cir. 1981) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  Absent any allegation or evidence of intent to punish, the Court looks to "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it."  Id. at 103 (quoting Bell, 441 U.S. at 538).  If the conditions do not amount to "punishment," allegations that defendants have denied a detainee access to basic human needs such as food or shelter are evaluated under a standard of "deliberate indifference," which requires a plaintiff to establish both that his conditions fell below the "minimal civilized measure of life's necessities," and that defendants knew of and disregarded an excessive risk to the detainee's health or safety.  Benjamin v. Fraser, 343 F.3d 35, 50 (2d Cir. 2003); see also Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (noting that claims for deliberate indifference to the health or safety of a detainee are analyzed the same under the Eighth and Fourteenth Amendments); Solomon v. Nassau Cnty., 759 F. Supp.

2d 251, 257–58 (E.D.N.Y. 2011); <u>Martin v. Cnty. of Nassau</u>, 692 F. Supp. 2d 282, 295 (E.D.N.Y. 2010).

Plaintiff alleges that he "was denied a phone call and food," FAC ¶ 33, and that "[w]hen he was first brought to the precinct, he was denied any food and water," <u>id.</u> ¶ 76. The FAC does not specify the length of the alleged deprivation. And plaintiff, notably, does not allege that these conditions were imposed for the purpose of punishing him. [7] <u>See</u> <u>Webster v. City of New York</u>, 333 F. Supp. 2d 184, 200 (S.D.N.Y. 2004). Accordingly, this Court must determine whether the deprivation was justified by a legitimate governmental purpose. <u>Lareau</u>, 651 F.2d at 103.

It appears that plaintiff arrived at the precinct shortly before midnight on June 6, 2009. McCann Decl., Ex. D. It is well established that "[t]here are legitimate governmental purposes that justify not feeding every detainee upon arrival at a police station, particularly those detainees who arrive at a police station in the early morning hours." <u>Webster</u>, 333 F. Supp. 2d at 200. The nature of the alleged deprivation therefore does not support an inference of punitive intent.

Ultimately, the determination of whether a deprivation of food and water rises to the level of a constitutional violation turns on the length of the deprivation. <u>See, e.g.</u>, <u>Simmons v. Kelly</u>, No. 06 Civ. 6183(RJS), 2009 WL 857410, at *7 (S.D.N.Y. Mar. 31, 2009). For example, a deprivation lasting two and a half days was held to be a constitutional violation, <u>Hodge v. Ruperto</u>, 739 F. Supp. 873, 878 (S.D.N.Y. 1990), while a deprivation of a few hours was not, <u>Webster v. City of New York</u>, 333 F. Supp. 2d 184,

---

[7] Plaintiff alleges that it "is an ongoing practice within the confines of the precinct to deny food and water to individuals who are arrested for a serious crime," FAC ¶ 78, but the FAC does not contain a specific claim of municipal liability on this count. In any event, even on the most generous reading, such a conclusory allegation of an official policy or custom is insufficient to state a plausible claim against the City. <u>Triano</u>, 895 F. Supp. 2d at 535.

200 (S.D.N.Y. 2004). Plaintiff arrived at the precinct shortly before midnight and was arraigned the following afternoon. McCann Decl., Ex. D.[8] Courts have consistently held that the overnight deprivation of food and water does not rise to the level of a constitutional violation. See, e.g., Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 269 (N.D.N.Y. 2008) (dismissing claims based on deprivation lasting from the detainee's arrest at 5:35 p.m. until the following morning); Felmine v. City of New York, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268, at *22 (E.D.N.Y. Sept. 29, 2011) (granting summary judgment on claims based on deprivation for "several hours" after detainee was arrested around midnight).

For these reasons, the plaintiff has failed to state a plausible claim for unconstitutional conditions of pretrial confinement.

### B. Deliberate Indifference to Medical Needs

"There are two elements to a claim of deliberate indifference to a serious medical condition: The plaintiff must show that she or he had a 'serious medical condition' and that it was met with 'deliberate indifference.'" Caiozzo, 581 F.3d at 72 (internal quotation omitted). A "serious medical condition" is one that "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiff alleges that he "suffered an anxiety attack and developed chest pains" while being arrested "and had to be taken to Woodhull hospital." FAC ¶ 34; see also id.

---

[8] Plaintiff does not specify the total length of the time during which he was deprived food and water. It appears from his Prisoner Arraignment Lookup form that less than 17 hours passed in total between his arrest and arraignment. McCann Decl., Ex. D. However, the deprivation may not have lasted that long. Indeed, plaintiff does not allege that the deprivation lasted for his entire time at the precinct, but only "[w]hen he was first brought to the precinct." FAC ¶ 76. Moreover, plaintiff alleges that at some point after his arrival he suffered a panic attack and was taken to the hospital. FAC ¶ 34. It is unclear when exactly during the night of his arrest this occurred and whether the alleged deprivation occurred only prior to his hospitalization or continued after he returned to the precinct for arraignment.

¶¶ 79–80.  Plaintiff does not identify his medical condition, id. ¶80, making it impossible to determine at the pleading stage whether it was "sufficiently serious." Chance, 143 F.3d 698 at 702.  However, even in light of all reasonable inferences, plaintiff's allegations do not show that defendants acted "with a sufficiently culpable state of mind."  Id.

Plaintiff alleges, in conclusory fashion, that the defendant police officers "knew about plaintiff's medical condition but failed to take corrective actions to accommodate him."  FAC ¶ 80.  Plaintiff's other allegations belie this assertion.  He alleges that after he "suffered an anxiety attack and developed chest pains" he was "taken to Woodhull hospital."  Id. ¶ 34.  The reasonable inference, then, is that defendants "[took] corrective actions" once plaintiff manifested signs of his medical condition.  See Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 268 (N.D.N.Y. 2008) (holding that plaintiff failed to state a claim for deliberate indifference "because he admits that his medical concerns were in fact addressed"); see also Salam v. Parac, No. 95 CV 4700(SJ), 1997 WL 227995, at *3 (E.D.N.Y. May 1, 1997) ("Medical personnel's prescription of medication to control Plaintiff's high blood pressure does not constitute deliberate indifference to his medical needs.  To the contrary, it establishes Defendants' direct attention to Plaintiff's medical needs.").  Absent any allegation that defendants deliberately or recklessly exacerbated plaintiff's condition, delayed seeking medical attention, or caused him to receive inadequate treatment, plaintiff does not state a plausible claim for deliberate indifference his medical needs.  See, e.g., Gay v. Terrell, No. 12-CV-02925 (CBA)(VMS), 2013 WL 5437045, at *19 (E.D.N.Y. Sept. 23, 2013) ("In a case such as this one in which the prisoner has actually received medical treatment,

deliberate indifference will not be found unless the medical attention rendered was so woefully inadequate as to amount to no treatment at all.") (quotation omitted).

### C.  Failure to Protect and Cruel and Unusual Punishment

Plaintiff also asserts claims related to his imprisonment at Rikers Island pending trial—failure to protect, based on his being assaulted on three occasions by other inmates; and cruel and unusual punishment, based on the laceration on his foot he developed as a result of the conditions of his confinement.  Neither of these claims can survive against any of the individual defendants.  Even under a generous reading of the FAC, plaintiff fails to allege their personal involvement in the alleged deprivations. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

With respect to plaintiff's claim of failure to protect, the FAC alleges only that "Defendants John and Jane Does were aware of the likelihood of harm to plaintiff yet failed to protect him from other inmates."  FAC ¶ 84 (emphasis added).   There are no allegations that Donovan, Scandole, Hynes, or Jackson had any involvement in failing to protect plaintiff.  Accordingly, plaintiff's claims for failure to protect against these defendants are fatally defective.  Costello, 632 F.3d 41 at 48–49.  And plaintiff also fails to state a plausible claim against the John Doe defendants.  The FAC describes these defendants as "police officers of the City of New York," FAC ¶ 1, but Rikers Island is staffed by employees of the DOC.  It therefore cannot reasonably be inferred that the John Doe defendants—NYPD officers—were personally involved in failing to protect plaintiff at Rikers Island.  See Mendoza v. Cnty. of Nassau, No. 11-CV-02487(SJF)(AKT), 2012 WL 4490539, at *9 (E.D.N.Y. Sept. 27, 2012) (finding that plaintiff failed to plead conspiracy involving New York State Park Police where the complaint identified the John Doe defendants as "police officers employed by the Nassau County Police

Department"); <u>Fisher v. Cnty. of Nassau</u>, No. 10-CV-0677(JS)(ETB), 2011 WL 4899920, at *3–4 (E.D.N.Y. Oct. 13, 2011) (finding that substitution of "Police Officer James Crawford for an improperly-named Corrections Officer Crawford" was an amendment that did not relate back to the original complaint).

With respect to his claim of cruel and unusual punishment, plaintiff does not specify in the FAC the defendants against whom this claim is asserted. <u>See</u> FAC ¶ 90. Nor does plaintiff allege the nature of the "conditions" that led to his infection. <u>Id.</u> ¶¶ 87–88. But neither does the FAC contain any allegations whatsoever that any of the individual defendants were personally involved in the conditions of plaintiff's confinement, <u>see id.</u> ¶¶ 86–90, let alone allegations that any of the individual defendants "direct[ly] participated" in creating these conditions, "fail[ed] to remedy the alleged wrong after learning of it," created "a policy or custom under which unconstitutional practices occurred," or were "gross[ly] negligen[t] in managing subordinates," <u>Black</u>, 76 F.3d at 74. Plaintiff's claim of cruel and unusual punishment is therefore fatally defective with respect to the individual defendants. <u>Costello</u>, 632 F.3d 41 at 48–49.

Plaintiff also fails to state a plausible claim on either of these grounds against any of the other defendants. As discussed <u>supra</u>, the NYPD and DOC are non-suable entities. With respect to the City, plaintiff does not specifically assert a <u>Monell</u> claim on this ground. <u>See</u> FAC ¶¶ 46–53 (asserting municipal liability claim based on false arrest). But even on the most generous reading of the FAC, plaintiff makes no allegation of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers," or practices that are so "permanent and well settled" as to constitute governmental "custom," related to any alleged failure to

protect plaintiff or the conditions of his confinement at Rikers Island.  <u>Monell</u>, 436 U.S. at 690.  Accordingly, defendants' motion to dismiss these claims is granted.

VI.    Plaintiff's State Law Tort Claims

Plaintiff also asserts claims of assault, battery, and negligence under New York tort law.  FAC ¶¶ 62–68, 91–94.  These claims are time-barred.  Tort claims against New York City or its employees must be "commenced within one year and ninety days after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. L. § 50-i(1). The FAC does not specify the dates on which the events underlying these claims occurred, but in any event they could not have occurred after December 17, 2010—the day plaintiff was acquitted and released from imprisonment.[9]  Accordingly, the latest possible deadline for plaintiff to bring his state tort law claims was March 16, 2012, one year and 90 days after December 17, 2010.  Because plaintiff did not commence this action until June 6, 2012, these claims are untimely and must be dismissed.

Plaintiff argues that, notwithstanding the clearly applicable statute of limitations, this Court may exercise supplemental jurisdiction over his state tort law claims because they "arise from the same set of facts and circumstances" as his federal claims.  Pl.'s Opp'n at 25.  This argument is beside the point.  Supplemental jurisdiction and timeliness are separate questions.  State statutes of limitations apply to state law claims brought in federal court.  <u>Guaranty Trust Co. of N.Y. v. York</u>, 326 U.S. 99 (1945). Regardless of whether the Court may exercise supplemental jurisdiction over these claims, they are untimely and must be dismissed accordingly.

---

[9] The FAC alleges that Donovan assaulted and battered plaintiff.  FAC ¶¶ 64, 67.  Because plaintiff's contact with Donovan occurred well before his trial, the more reasonable inference is that plaintiff's assault and battery claims accrued much earlier than December 17, 2010, but the distinction is ultimately immaterial.

The defendants' motion to dismiss plaintiff's state law tort claims is therefore granted.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint is GRANTED.

SO ORDERED.

Dated:  Brooklyn, New York
    December 20, 2013


       _____/s/_____
       I. Leo Glasser
       Senior United States District Judge